(Slip Opinion)　　　OCTOBER TERM, 2004　　　1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## EXXON MOBIL CORP. ET AL. *v.* SAUDI BASIC INDUSTRIES CORP.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 03–1696.　Argued February 23, 2005—Decided March 30, 2005

The *Rooker-Feldman* doctrine, at issue in this case, has been applied by this Court only twice, in *Rooker* v. *Fidelity Trust Co.*, 263 U. S. 413, and in *District of Columbia Court of Appeals* v. *Feldman*, 460 U. S. 462. In *Rooker,* plaintiffs previously defeated in state court filed suit in a Federal District Court alleging that the adverse state-court judgment was unconstitutional and asking that it be declared "null and void." 263 U. S., at 414–415. Noting preliminarily that the state court had acted within its jurisdiction, this Court explained that if the state-court decision was wrong, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." *Id.,* at 415. Federal district courts, *Rooker* recognized, are empowered to exercise only original, not appellate, jurisdictions. *Id.,* at 416. Because Congress has empowered this Court alone to exercise appellate authority "to reverse or modify" a state-court judgment, *ibid.,* the Court affirmed a decree dismissing the federal suit for lack of jurisdiction, *id.,* at 415, 417. In *Feldman,* two plaintiffs brought federal-court actions after the District of Columbia's highest court denied their petitions to waive a court Rule requiring D. C. bar applicants to have graduated from an accredited law school. Recalling *Rooker*, this Court observed that the District Court lacked authority to review a final judicial determination of the D. C. high court because such review "can be obtained only in this Court." 460 U. S., at 476. Concluding that the D. C. court's proceedings applying the accreditation Rule to the plaintiffs were "judicial in nature," *id.,* at 479–482, this Court ruled that the Federal District Court lacked subject-matter jurisdiction, *id.,* at 482. However, concluding also that, in promulgating the bar admission Rule,

2    EXXON MOBIL CORP. *v.* SAUDI BASIC INDUSTRIES CORP.

Syllabus

the D. C. court had acted legislatively, not judicially, *id.,* at 485–486, this Court held that 28 U. S. C. §1257 did not bar the District Court from addressing the validity of the Rule itself, so long as the plaintiffs did not seek review of the Rule's application in a particular case, 460 U. S., at 486. Since *Feldman*, this Court has never applied *Rooker-Feldman* to dismiss an action for want of jurisdiction. However, the lower federal courts have variously interpreted the *Rooker-Feldman* doctrine to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law under 28 U. S. C. §1738.

In this case, two subsidiaries of petitioner Exxon Mobil Corporation formed joint ventures with respondent Saudi Basic Industries Corp. (SABIC) to produce polyethylene in Saudi Arabia. When a dispute arose over royalties that SABIC had charged the joint ventures, SABIC preemptively sued the two subsidiaries in a Delaware state court, seeking a declaratory judgment that the royalties were proper. ExxonMobil and the subsidiaries then countersued in the Federal District Court, alleging that SABIC overcharged them. Before the state-court trial, which ultimately yielded a jury verdict of over $400 million for the ExxonMobil subsidiaries, the District Court denied SABIC's motion to dismiss the federal suit. On interlocutory appeal, over eight months after the state-court jury verdict, the Third Circuit, on its own motion, raised the question whether subject-matter jurisdiction over the federal suit failed under the *Rooker-Feldman* doctrine because ExxonMobil's claims had already been litigated in state court. The court did not question the District Court's subject-matter jurisdiction at the suit's outset, but held that federal jurisdiction terminated when the Delaware court entered judgment on the jury verdict.

*Held:* The *Rooker-Feldman* doctrine is confined to cases of the kind from which it acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines allowing federal courts to stay or dismiss proceedings in deference to state-court actions. Pp. 10–13.

(a) *Rooker* and *Feldman* exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, §1257, precludes a federal district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate

Cite as: 544 U. S. ____ (2005)  3

Syllabus

under a congressional grant of authority. In both cases, the plaintiffs, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment. Because §1257, as long interpreted, vests authority to review a state-court judgment solely in this Court, *e.g., Feldman*, 460 U. S., at 476, the District Courts lacked subject-matter jurisdiction, see, *e.g., Verizon Md. Inc.* v. *Public Serv. Comm'n of Md.,* 535 U. S. 635, 644, n. 3. When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court. See, *e.g., McClellan* v. *Carland*, 217 U. S. 268, 282. Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation. See, *e.g., Colorado River Water Conservation Dist.* v. *United States,* 424 U. S. 800. But neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or a related question while the case remains *sub judice* in a federal court. Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law. Under 28 U. S. C. §1738, federal courts must "give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc.* v. *First Alabama Bank,* 474 U. S. 518, 523. Preclusion is not a jurisdictional matter. See Fed. Rule Civ. Proc. 8(c). In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court. Nor does §1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents an independent claim, even one that denies a state court's legal conclusion in a case to which the plaintiff was a party, there is jurisdiction and state law determines whether the defendant prevails under preclusion principles. Pp. 10–12.

  (b) The *Rooker-Feldman* doctrine does not preclude the federal court from proceeding in this case. ExxonMobil has not repaired to federal court to undo the Delaware judgment in its favor, but appears to have filed its federal-court suit (only two weeks after SABIC filed in Delaware and well before any judgment in state court) to protect itself in the event it lost in state court on grounds (such as the state statute of limitations) that might not preclude relief in the federal venue. *Rooker-Feldman* did not prevent the District Court from exercising jurisdiction when ExxonMobil filed the federal action, and it did not emerge to vanquish jurisdiction after ExxonMobil prevailed in the Delaware courts. The Third Circuit misperceived the narrow

4   EXXON MOBIL CORP. *v.* SAUDI BASIC INDUSTRIES CORP.

Syllabus

ground occupied by *Rooker-Feldman*, and consequently erred in ordering the federal action dismissed.  Pp. 12–13.

364 F. 3d 102, reversed and remanded.

GINSBURG, J., delivered the opinion for a unanimous Court.

Cite as: 544 U. S. ____ (2005)   1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 03–1696

EXXON MOBIL CORPORATION, EXXON CHEMICAL ARABIA, INC., AND MOBIL YANBU PETROCHEMICAL COMPANY, INC., PETITIONERS *v.* SAUDI BASIC INDUSTRIES CORPORATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[March 30, 2005]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns what has come to be known as the *Rooker-Feldman* doctrine, applied by this Court only twice, first in *Rooker* v. *Fidelity Trust Co.*, 263 U. S. 413 (1923), then, 60 years later, in *District of Columbia Court of Appeals* v. *Feldman*, 460 U. S. 462 (1983). Variously interpreted in the lower courts, the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U. S. C. §1738. See, *e.g., Moccio* v. *New York State Office of Court Admin.*, 95 F. 3d 195, 199–200 (CA2 1996).

*Rooker* was a suit commenced in Federal District Court to have a judgment of a state court, adverse to the federal court plaintiffs, "declared null and void." 263 U. S., at 414. In *Feldman*, parties unsuccessful in the District of Columbia Court of Appeals (the District's highest court)

2   EXXON MOBIL CORP. *v.* SAUDI BASIC INDUSTRIES CORP.

Opinion of the Court

commenced a federal-court action against the very court that had rejected their applications. Holding the federal suits impermissible, we emphasized that appellate jurisdiction to reverse or modify a state-court judgment is lodged, initially by §25 of the Judiciary Act of 1789, 1 Stat. 85, and now by 28 U. S. C. §1257, exclusively in this Court. Federal district courts, we noted, are empowered to exercise original, not appellate, jurisdiction. Plaintiffs in *Rooker* and *Feldman* had litigated and lost in state court. Their federal complaints, we observed, essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments. We declared such suits out of bounds, *i.e.*, properly dismissed for want of subject-matter jurisdiction.

The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

In the case before us, the Court of Appeals for the Third Circuit misperceived the narrow ground occupied by *Rooker-Feldman*, and consequently erred in ordering the federal action dismissed for lack of subject-matter jurisdiction. We therefore reverse the Third Circuit's judgment.

I

In *Rooker* v. *Fidelity Trust Co.,* 263 U. S. 413, the parties defeated in state court turned to a Federal District Court for relief. Alleging that the adverse state-court judgment was rendered in contravention of the Constitution, they asked the federal court to declare it "null and

void." *Id.,* at 414–415. This Court noted preliminarily that the state court had acted within its jurisdiction. *Id.,* at 415. If the state-court decision was wrong, the Court explained, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." *Ibid.* Federal district courts, the *Rooker* Court recognized, lacked the requisite appellate authority, for their jurisdiction was "strictly original." *Id.,* at 416. Among federal courts, the *Rooker* Court clarified, Congress had empowered only this Court to exercise appellate authority "to reverse or modify" a state-court judgment. *Ibid.* Accordingly, the Court affirmed a decree dismissing the suit for lack of jurisdiction. *Id.,* at 415, 417.

Sixty years later, the Court decided *District of Columbia Court of Appeals* v. *Feldman,* 460 U. S. 462. The two plaintiffs in that case, Hickey and Feldman, neither of whom had graduated from an accredited law school, petitioned the District of Columbia Court of Appeals to waive a court Rule that required D. C. bar applicants to have graduated from a law school approved by the American Bar Association. After the D. C. court denied their waiver requests, Hickey and Feldman filed suits in the United States District Court for the District of Columbia. *Id.,* at 465–473. The District Court and the Court of Appeals for the District of Columbia Circuit disagreed on the question whether the federal suit could be maintained, and we granted certiorari. *Id.,* at 474–475.

Recalling *Rooker*, this Court's opinion in *Feldman* observed first that the District Court lacked authority to review a final judicial determination of the D. C. high court. "Review of such determinations," the *Feldman* opinion reiterated, "can be obtained only in this Court." 460 U. S., at 476. The "crucial question," the Court next stated, was whether the proceedings in the D. C. court were "judicial in nature." *Ibid.* Addressing that question,

4    EXXON MOBIL CORP. *v.* SAUDI BASIC INDUSTRIES CORP.

Opinion of the Court

the Court concluded that the D. C. court had acted both judicially and legislatively.

In applying the accreditation Rule to the Hickey and Feldman waiver petitions, this Court determined, the D. C. court had acted judicially. *Id.,* at 479–482. As to that adjudication, *Feldman* held, this Court alone among federal courts had review authority. Hence, "to the extent that Hickey and Feldman sought review in the District Court of the District of Columbia Court of Appeals' denial of their petitions for waiver, the District Court lacked subject-matter jurisdiction over their complaints." *Id.,* at 482. But that determination did not dispose of the entire case, for in promulgating the bar admission rule, this Court said, the D. C. court had acted legislatively, not judicially. *Id.,* at 485–486. "Challenges to the constitutionality of state bar rules," the Court elaborated, "do not necessarily require a United States district court to review a final state-court judgment in a judicial proceeding." *Id.,* at 486. Thus, the Court reasoned, 28 U. S. C. §1257 did not bar District Court proceedings addressed to the validity of the accreditation Rule itself. *Feldman,* 460 U. S., at 486. The Rule could be contested in federal court, this Court held, so long as plaintiffs did not seek review of the Rule's application in a particular case. *Ibid.*

The Court endeavored to separate elements of the Hickey and Feldman complaints that failed the jurisdictional threshold from those that survived jurisdictional inspection. Plaintiffs had urged that the District of Columbia Court of Appeals acted arbitrarily in denying the waiver petitions of Hickey and Feldman, given that court's "former policy of granting waivers to graduates of unaccredited law schools." *Ibid.* That charge, the Court held, could not be pursued, for it was "inextricably intertwined with the District of Columbia Court of Appeals' decisions, in judicial proceedings, to deny [plaintiffs'] petitions." *Id.,*

Cite as: 544 U. S. ____ (2005) 5

Opinion of the Court

at 486–487.[1]

On the other hand, the Court said, plaintiffs could maintain "claims that the [bar admission] rule is unconstitutional because it creates an irrebuttable presumption that only graduates of accredited law schools are fit to practice law, discriminates against those who have obtained equivalent legal training by other means, and impermissibly delegates the District of Columbia Court of Appeals' power to regulate the bar to the American Bar Association," for those claims "do not require review of a judicial decision in a particular case." *Id.,* at 487. The Court left open the question whether the doctrine of res judicata foreclosed litigation of the elements of the complaints spared from dismissal for want of subject-matter jurisdiction. *Id.,* at 487–488.

Since *Feldman*, this Court has never applied *Rooker-Feldman* to dismiss an action for want of jurisdiction. The few decisions that have mentioned *Rooker* and *Feldman* have done so only in passing or to explain why those cases did not dictate dismissal. See *Verizon Md. Inc.* v. *Public Serv. Comm'n of Md.,* 535 U. S. 635, 644, n. 3 (2002) (*Rooker-Feldman* does not apply to a suit seeking review of state agency action); *Johnson* v. *De Grandy,* 512 U. S. 997, 1005–1006 (1994) (*Rooker-Feldman* bars a losing party in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights," but the doctrine has no application to a federal suit

---

[1] Earlier in the opinion the Court had used the same expression. In a footnote, the Court explained that a district court could not entertain constitutional claims attacking a state-court judgment, even if the state court had not passed directly on those claims, when the constitutional attack was "inextricably intertwined" with the state court's judgment. *District of Columbia Court of Appeals* v. *Feldman,* 460 U. S. 462, 482, n. 16 (1983).

6   EXXON MOBIL CORP. *v.* SAUDI BASIC INDUSTRIES CORP.

Opinion of the Court

brought by a nonparty to the state suit.); *Howlett* v. *Rose,* 496 U. S. 356, 370, n. 16 (1990) (citing *Rooker* and *Feldman* for "the rule that a federal district court cannot entertain an original action alleging that a state court violated the Constitution by giving effect to an unconstitutional state statute"); *ASARCO Inc.* v. *Kadish,* 490 U. S. 605, 622–623 (1989) (If, instead of seeking review of an adverse state supreme court decision in the Supreme Court, petitioners sued in federal district court, the federal action would be an attempt to obtain direct review of the state supreme court decision and would "represent a partial inroad on *Rooker-Feldman*'s construction of 28 U. S. C. §1257.");[2] *Pennzoil Co.* v. *Texaco Inc.,* 481 U. S. 1, 6–10 (1987) (abstaining under *Younger* v. *Harris,* 401 U. S. 37 (1971), rather than dismissing under *Rooker-Feldman*, in a suit that challenged Texas procedures for enforcing judgments); 481 U. S., at 18 (SCALIA, J., concurring) (The "so-called *Rooker-Feldman* doctrine" does not deprive the

---

[2] Respondent Saudi Basic Industries Corp. urges that *ASARCO Inc.* v. *Kadish,* 490 U. S. 605 (1989), expanded *Rooker-Feldman*'s jurisdictional bar to include federal actions that simply raise claims previously litigated in state court. Brief for Respondent 20–22. This is not so. In *ASARCO*, the petitioners (defendants below in the state-court action) sought review in this Court of the Arizona Supreme Court's invalidation of a state statute governing mineral leases on state lands. 490 U. S., at 610. This Court dismissed the suggestion of the United States that the petitioners should have pursued their claim as a new action in federal district court. Such an action, we said, "in essence, would be an attempt to obtain direct review of the Arizona Supreme Court's decision in the lower federal courts" in contravention of 28 U. S. C. §1257. 490 U. S., at 622–623. The injury of which the petitioners (the losing parties in state court) could have complained in the hypothetical federal suit would have been caused by the state court's invalidation of their mineral leases, and the relief they would have sought would have been to undo the state court's invalidation of the statute. The hypothetical suit in *ASARCO*, therefore, shares the characteristics of the suits in *Rooker* and *Feldman*, *i.e.*, loser in state court invites federal district court to overturn state-court judgment.

Cite as: 544 U. S. ____ (2005)           7

Opinion of the Court

Court of jurisdiction to decide Texaco's challenge to the Texas procedures); *id.,* at 21 (Brennan, J., concurring in judgment) (*Rooker* and *Feldman* do not apply; Texaco filed its federal action to protect its "right to a meaningful opportunity for appellate review, not to challenge the merits of the Texas suit."). But cf. 481 U. S., at 25–26 (Marshall, J., concurring in judgment) (*Rooker-Feldman* would apply because Texaco's claims necessarily called for review of the merits of its state appeal). See also *Martin* v. *Wilks,* 490 U. S. 755, 784, n. 21 (1989) (STEVENS, J., dissenting) (it would be anomalous to allow courts to sit in review of judgments entered by courts of equal, or greater, authority (citing *Rooker* and *Feldman*)).[3]

II

In 1980, two subsidiaries of petitioner Exxon Mobil Corporation (then the separate companies Exxon Corp. and Mobil Corp.) formed joint ventures with respondent Saudi Basic Industries Corp. (SABIC) to produce polyethylene in Saudi Arabia. 194 F. Supp. 2d 378, 384 (NJ 2002). Two decades later, the parties began to dispute royalties that SABIC had charged the joint ventures for sublicenses to a polyethylene manufacturing method. 364 F. 3d 102, 103 (CA3 2004).

SABIC preemptively sued the two ExxonMobil subsidiaries in Delaware Superior Court in July 2000 seeking a declaratory judgment that the royalty charges were proper under the joint venture agreements. 194 F. Supp. 2d, at

---

[3] Between 1923, when the Court decided *Rooker*, and 1983, when it decided *Feldman*, the Court cited *Rooker* in one opinion, *Fishgold* v. *Sullivan Drydock & Repair Corp.,* 328 U. S. 275, 283 (1946), in reference to the finality of prior judgments. See *Rooker* v. *Fidelity Trust Co.,* 263 U. S. 413, 415 (1923) ("Unless and until . . . reversed or modified, [the state-court judgment] would be an effective and conclusive adjudication."). *Rooker*'s only other appearance in the United States Reports before 1983 occurs in Justice White's dissent from denial of certiorari in *Florida State Bd. of Dentistry* v. *Mack*, 401 U. S. 960, 961 (1971).

8   EXXON MOBIL CORP. *v.* SAUDI BASIC INDUSTRIES CORP.

Opinion of the Court

385–386.  About two weeks later, ExxonMobil and its subsidiaries countersued SABIC in the United States District Court for the District of New Jersey, alleging that SABIC overcharged the joint ventures for the sublicenses. *Id.,* at 385; App. 3.  ExxonMobil invoked subject-matter jurisdiction in the New Jersey action under 28 U. S. C. §1330, which authorizes district courts to adjudicate actions against foreign states.  194 F. Supp. 2d, at 401. [4]

In January 2002, the ExxonMobil subsidiaries answered SABIC's state-court complaint, asserting as counterclaims the same claims ExxonMobil had made in the federal suit in New Jersey.  364 F. 3d, at 103.  The state suit went to trial in March 2003, and the jury returned a verdict of over $400 million in favor of the ExxonMobil subsidiaries. *Ibid.; Saudi Basic Industries Corp.* v. *Mobil Yanbu Petrochemical Co.*, 866 A. 2d 1, 11 (Del. 2005).  SABIC appealed the judgment entered on the verdict to the Delaware Supreme Court.

Before the state-court trial, SABIC moved to dismiss the federal suit, alleging, *inter alia*, immunity under the Foreign Sovereign Immunities Act of 1976, 28 U. S. C. §1602 *et seq.* (2000 ed. and Supp. II).  The Federal District Court denied SABIC's motion to dismiss.  194 F. Supp. 2d, at 401–407, 416–417.  SABIC took an interlocutory appeal, and the Court of Appeals heard argument in December 2003, over eight months after the state-court jury verdict. 364 F. 3d, at 103–104.[5]

---

[4] SABIC is a Saudi Arabian corporation, 70% owned by the Saudi Government and 30% owned by private investors.  194 F. Supp. 2d, at 384.

[5] At ExxonMobil's request, the Court of Appeals initially stayed its consideration of the appeal to await resolution of the proceedings in Delaware.  App. 9–10.  In November 2003, shortly after SABIC filed its appeal in the Delaware Supreme Court, the Court of Appeals, on SABIC's motion, lifted the stay and set the appeal for argument.  *Id.,* at 11–13.

Cite as: 544 U. S. ____ (2005)   9

Opinion of the Court

The Court of Appeals, on its own motion, raised the question whether "subject matter jurisdiction over this case fails under the *Rooker-Feldman* doctrine because ExxonMobil's claims have already been litigated in state court." *Id.,* at 104.[6] The court did not question the District Court's possession of subject-matter jurisdiction at the outset of the suit, but held that federal jurisdiction terminated when the Delaware Superior Court entered judgment on the jury verdict. *Id.,* at 104–105. The court rejected ExxonMobil's argument that *Rooker-Feldman* could not apply because ExxonMobil filed its federal complaint well before the state-court judgment. The only relevant consideration, the court stated, "is whether the state judgment precedes a federal judgment on the same claims." 364 F. 3d, at 105. If *Rooker-Feldman* did not apply to federal actions filed prior to a state-court judgment, the Court of Appeals worried, "we would be encouraging parties to maintain federal actions as 'insurance policies' while their state court claims were pending." 364 F. 3d, at 105. Once ExxonMobil's claims had been litigated to a judgment in state court, the Court of Appeals held, *Rooker-Feldman* "preclude[d] [the] federal district court from proceeding." 364 F. 3d, at 104 (internal quotation marks omitted).

ExxonMobil, at that point prevailing in Delaware, was not seeking to overturn the state-court judgment. Nevertheless, the Court of Appeals hypothesized that, if SABIC won on appeal in Delaware, ExxonMobil would be endeavoring in the federal action to "invalidate" the state-court judgment, "the very situation," the court concluded, "contemplated by *Rooker-Feldman*'s 'inextricably intertwined' bar." *Id.,* at 106.

───────────

[6] One day before argument, the Court of Appeals directed the parties to be prepared to address whether the *Rooker-Feldman* doctrine deprived the District Court of jurisdiction over the case. App. 17.

10  EXXON MOBIL CORP. *v.* SAUDI BASIC INDUSTRIES CORP.

Opinion of the Court

We granted certiorari, 543 U. S. ___ (2004), to resolve conflict among the Courts of Appeals over the scope of the *Rooker-Feldman* doctrine.  We now reverse the judgment of the Court of Appeals for the Third Circuit.[7]

III

*Rooker* and *Feldman* exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U. S. C. §1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, *e.g.,* §1330 (suits against foreign states), §1331 (federal question), and §1332 (diversity).  In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.  Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment.  Because §1257, as long interpreted, vests authority to review a state court's judgment solely in this Court, *e.g., Feldman*, 460 U. S., at 476; *Atlantic Coast Line R. Co.* v. *Locomotive Engineers,* 398 U. S. 281, 286 (1970); *Rooker*, 263 U. S., at 416, the District Courts in *Rooker* and *Feldman* lacked subject-matter jurisdiction.  See *Verizon Md. Inc.,* 535 U. S., at 644, n. 3 ("The *Rooker-Feldman* doctrine merely recognizes that 28 U. S. C. §1331 is a grant of original

---

[7] SABIC contends that this case is moot because the Delaware Supreme Court has affirmed the trial-court judgment in favor of Exxon-Mobil, *Saudi Basic Industries Corp.* v. *Mobil Yanbu Petrochemical Co.*, 866 A. 2d 1 (2005), and has denied reargument en banc, *Saudi Basic Industries Corp.* v. *Mobil Yanbu Petrochemical Co.*, No. 493,2003 (Feb. 22, 2005).  Brief for Respondent 10–13.  SABIC continues to oppose the Delaware judgment, however, and has represented that it will petition this Court for a writ of certiorari.  Tr. of Oral Arg. 22–23.  The controversy therefore remains live.

Cite as: 544 U. S. ____ (2005)           11

Opinion of the Court

jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, see §1257(a).").[8]

When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan* v. *Carland*, 217 U. S. 268, 282 (1910); accord *Doran* v. *Salem Inn, Inc.,* 422 U. S. 922, 928 (1975); *Atlantic Coast Line R. Co.*, 398 U. S., at 295. Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation. See, *e.g., Colorado River Water Conservation Dist.* v. *United States,* 424 U. S. 800 (1976); *Younger* v. *Harris,* 401 U. S. 37 (1971); *Burford* v. *Sun Oil Co.,* 319 U. S. 315 (1943); *Railroad Comm'n of Tex.* v. *Pullman Co.,* 312 U. S. 496 (1941). But neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court.

Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law. The Full Faith and Credit Act, 28 U. S. C. §1738, originally enacted in 1790, ch. 11, 1 Stat. 122, requires the federal court to "give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc.* v. *First Alabama Bank,* 474 U. S. 518,

---

[8] Congress, if so minded, may explicitly empower district courts to oversee certain state-court judgments and has done so, most notably, in authorizing federal habeas review of state prisoners' petitions. 28 U. S. C. §2254(a).

12  EXXON MOBIL CORP. *v.* SAUDI BASIC INDUSTRIES CORP.

Opinion of the Court

523 (1986); accord *Matsushita Elec. Industrial Co.* v. *Epstein,* 516 U. S. 367, 373 (1996); *Marrese* v. *American Academy of Orthopaedic Surgeons,* 470 U. S. 373, 380–381 (1985). Preclusion, of course, is not a jurisdictional matter. See Fed. Rule Civ. Proc. 8(c) (listing res judicata as an affirmative defense). In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court.

Nor does §1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *GASH Assocs.* v. *Village of Rosemont*, 995 F. 2d 726, 728 (CA7 1993); accord *Noel* v. *Hall*, 341 F. 3d 1148, 1163–1164 (CA9 2003).

This case surely is not the "paradigm situation in which *Rooker-Feldman* precludes a federal district court from proceeding." 364 F. 3d, at 104 (quoting *E. B.* v. *Verniero*, 119 F. 3d 1077, 1090–1091 (CA3 1997)). ExxonMobil plainly has not repaired to federal court to undo the Delaware judgment in its favor. Rather, it appears ExxonMobil filed suit in Federal District Court (only two weeks after SABIC filed in Delaware and well before any judgment in state court) to protect itself in the event it lost in state court on grounds (such as the state statute of limitations) that might not preclude relief in the federal venue. Tr. of Oral Arg. 46; App. 35–36.[9] *Rooker-Feldman* did not

---

[9] The Court of Appeals criticized ExxonMobil for pursuing its federal suit as an "insurance policy" against an adverse result in state court.

Cite as: 544 U. S. ____ (2005) 13

Opinion of the Court

prevent the District Court from exercising jurisdiction when ExxonMobil filed the federal action, and it did not emerge to vanquish jurisdiction after ExxonMobil prevailed in the Delaware courts.

\*    \*    \*

For the reasons stated, the judgment of the Court of Appeals for the Third Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

364 F. 3d 102, 105–106 (CA3 2004). There is nothing necessarily inappropriate, however, about filing a protective action. See, *e.g., Rhines* v. *Weber*, *ante*, at 7–8 (permitting a federal district court to stay a federal habeas action and hold the petition in abeyance while a petitioner exhausts claims in state court); *Union Pacific R. Co.* v. *Dept. of Revenue of Ore.*, 920 F. 2d 581, 584, and n. 9 (CA9 1990) (noting that the railroad company had filed protective actions in state court to prevent expiration of the state statute of limitations); *Government of Virgin Islands* v. *Neadle*, 861 F. Supp. 1054, 1055 (MD Fla. 1994) (staying an action brought by plaintiffs to "to protect themselves" in the event that personal jurisdiction over the defendants failed in the United States District Court for the Virgin Islands); see also *England* v. *Louisiana Bd. of Medical Examiners,* 375 U. S. 411, 421 (1964) (permitting a party to reserve litigation of federal constitutional claims for federal court while a state court resolves questions of state law).