UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GARY LEET, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 06-40096-FDS |
| CELLCO PARTNERSHIP, d/b/a VERIZON WIRELESS, | ) ) ) ) | |
| Defendant. | ) ) | |

# MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

**SAYLOR, J.**

This is an action brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and various state law theories. Plaintiff Gary Leet alleges that defendant Cellco Partnership, d/b/a Verizon Wireless ("Verizon"), furnished inaccurate information regarding his account to credit reporting agencies and that he consequently suffered harm when he was unable to obtain financing for a planned real estate investment. The amended complaint alleges what appears to be a negligence claim for "wrongfully damag[ing]" plaintiff's credit, as well as claims for breach of contract, violation of the federal and state credit reporting statutes, and violation of Mass. Gen. Laws ch. 93A.

Defendant has moved to dismiss for failure to state a claim upon which relief can be granted. For the reasons stated below, the motion to dismiss will be granted in part and denied in part.

I.      **Factual Background**

The following facts are as alleged in the amended complaint.

    A.      **Initiation of Cellular Phone Service**

Gary Leet is a resident of Milford, Massachusetts. He is self-employed as a professional investor. Verizon is a Delaware general partnership that provides cellular phone service throughout the United States. It has its principal place of business in New Jersey.

On February 26, 1998, plaintiff contacted Verizon to inquire about its cellular phone service and to express interest in signing up, subject to a review of the contract details. Shortly thereafter, on March 1, he received a telephone from Verizon. He also received a form contract, with instructions to sign it and return it to Verizon along with two forms of identification; however, because the contract was missing an addendum entitled "price plan," he did not do so.

Although the plan included a two-week trial provision with the right to cancel, plaintiff was concerned that he could not evaluate the plan without a fee schedule. He contacted Verizon to ask for a price plan and was told to allow two weeks for it to arrive. He did not use the telephone for two weeks while he waited to receive the pricing information.

    B.      **Dispute over Bills for Service**

On March 15, 1998, plaintiff received a bill from Verizon, dated March 10, in the amount of $32.90. On March 19, he contacted Verizon's customer service department and spoke to a representative named "Donna." He expressed a number of concerns to her, including the fact that he was unwilling to sign the contract or enter into a long-term agreement with Verizon until he received pricing information. Donna assured plaintiff that she would send him a price plan, that it would arrive in about two weeks, and that the two-week trial period would not commence until

2

he received that plan.  Further, she encouraged him to begin using the telephone, assuring him that he could not be held responsible for any charges as the fees had not been disclosed and he had not yet signed the contract.  Based on that conversation, he began using the telephone, but chose to withhold payment until he received the price plan.

When no price information arrived, plaintiff against contacted Verizon on April 1 and spoke to a representative named Jennifer Elderkin.  He explained to Elderkin that two weeks had passed and that he still had not received the price plan.  Elderkin apologized and indicated that she would send out the information.  Based on his conversation with Elderkin and the previous assurances made by Donna, plaintiff agreed to pay the March 10 bill.

Ten days later, he received a bill in the amount of $53.04.  According to plaintiff, the calls on this bill were charged at an average rate of 24 cents per minute.  He still had not received the price plan.

Plaintiff received another bill on June 10, which apparently covered a two-month period.  The average rate had increased from 24 cents per minute to $1.41 per minute, for a total of $287.43.  In response, he contacted Verizon and complained about the increased charges.  He stated that he felt deceived, that he had decided not to contract with Verizon for cellular phone service, and that he was unwilling to pay the most recent bill.  Verizon, however, allegedly threatened to damage his credit if he refused, and he therefore paid the bill.

Shortly thereafter, plaintiff again called Verizon and stated (1) that he had only paid the last bill out of fear induced by Verizon's coercion; (2) that he was rejecting Verizon's offer for cellular phone service; and (3) that he was ending the relationship and discontinuing use of the telephone.  He further stated that he would not pay any outstanding bills, as he had never signed

the contract and because of the verbal assurances made to him by Verizon's customer service representatives. Despite this call, plaintiff continued to receive monthly bills. The final bill, dated November 10, 1998, showed an unpaid balance of $493.91.

### C. Allegedly Forged Signature and Vehicle Registration

Plaintiff sent a letter to Verizon on October 26, 1998, demanding that it admit (1) that he never had a contractual obligation to pay for the cellular phone service; (2) that the payments he had previously made did not create a contract; and (3) that the service was provided solely at Verizon's risk. Additionally, he demanded that all collection efforts be halted and that Verizon retract any negative statements that could adversely affect his credit rating. Finally, he requested that Verizon return the money he had previously paid for the service bills, except for the first two payments. He never received an answer to his demand letter.

That same day (October 26), plaintiff contacted Verizon and spoke with an employee named Eileen Emson. Emson informed him that Verizon had in its files a contract, which bore his signature, and a receipt for a New York registration of a Lincoln automobile, which had been sent in as a form of identification. Plaintiff indicated to Emson that he was still in possession of the original, unsigned contract, that he had never registered a car in New York, and that he had never owned or registered a Lincoln. Copies of the documents were faxed to plaintiff. According to plaintiff, the signature on the contract is a forgery.

### D. Derogatory Information on Plaintiff's Credit Report

On June 4, 2002, plaintiff learned that in February 2002 Verizon had reported his unpaid bills to credit reporting agencies as an unpaid collections account. He alleges that because of the delinquent item on his credit report—which was now listed as $504.23—he was prevented from

fulfilling a real estate investment plan that he had planned to pursue. Specifically, he claims that the adverse credit report prohibited him from pursing a business opportunity comprised of "using leverage (mortgages) to buy as many single family homes as he could afford (approximately 10 million dollars worth) in the Riverside/San Bernardino area of California, renting them out, and holding them for long term appreciation." (Am. Compl. ¶35). He claims that as a result of his inability to pursue this opportunity, he has suffered damages of almost $7 million.

Plaintiff made a number of attempts to have the derogatory item removed from his credit report, including contacting the credit bureaus, contacting Verizon, and having his attorney send a demand letter to Verizon under Mass. Gen. Laws ch. 93A. These efforts, however, proved unsuccessful.

When those efforts failed, plaintiff decided to negotiate an agreement with Verizon. In September 2003, the parties agreed that he would pay $300, and that in exchange, Verizon would credit the remaining balance and would take steps to have the negative information deleted from his report. That agreement was confirmed in writing.

In 2004, however, plaintiff learned that Verizon had allegedly breached the new agreement and that the credit problem had not been resolved. Rather than reporting that his delinquency should be deleted, Verizon apparently reported "no change" to one agency and an outstanding collection balance of $204 to another. Upon learning of the breach, plaintiff contacted Verizon and spoke to William Hughes, Associate Director of Customer Service. Hughes stated that Verizon should have cleared up the credit problem once it received the $300 check. Hughes followed up with a letter, dated August 6, 2004, in which he indicated that plaintiff's credit problem "can and should" be removed. Nonetheless, the derogatory item remained on plaintiff's

report.

On May 2, 2005, plaintiff once again sent defendant a Chapter 93A demand letter. Verizon responded in a letter dated May 19, 2005. In this response, Verizon stated

> Mr. Leet's check for $300 was received on November 13, 2003 and Verizon Wireless, as a courtesy, requested the credit bureaus (Trans Union, Equifax and Experian) delete the derogatory information from his credit report.

(Am. Compl. ¶ 49). Plaintiff claims that the negative information remained on his credit report up to the date of drafting the May 2, 2005 demand letter. He indicates that the problem was only removed after that letter had been sent to Verizon.

## II.  Procedural History

Plaintiff filed the original complaint in this case in Worcester Superior Court on September 9, 2005. As amended, the complaint alleges claims for (1) what appears to be negligence, for "wrongfully damag[ing]" plaintiff's credit; (2) breach of contract; (3) violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and the Massachusetts Credit Reporting Act, Mass. Gen. Laws ch. 93, § 50 *et seq.*; and (4) violation of Mass. Gen. Laws ch. 93A.[1]

Verizon removed the action to this Court on May 22, 2006. On June 13, 2006, Verizon moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## III.  Analysis

---

[1] There is some dispute as to whether the amended complaint in fact makes a claim for violation of the FCRA, as the amended complaint does not specifically recite that provision of the U.S. Code. However, the amended complaint makes express reference to the FCRA in paragraph 31, where it states that "defendant violated the Fair Credit Reporting Act which states that defendant had a duty to conduct an investigation with respect to disputed information." Additionally, Count 3 of the amended complaint alleges that "defendant has violated the U.S. and Massachusetts Fair Credit Reporting Act." (Am. Compl. ¶ 63). Accordingly, for the purpose of this motion to dismiss, the Court will deem the amended complaint to have raised a claim for violation of the FCRA.

6

A.  **Standard of Review**

A court may not dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice can be taken.  *Nollet v. Justices of the Trial Court of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000).  Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

B.  **Federal Law Claim**

The amended complaint alleges that Verizon violated the FCRA by failing to investigate properly the disputed information on plaintiff's credit report.  Verizon responds that the FCRA claim should be dismissed because plaintiff has failed to allege that any credit reporting agency ever provided Verizon with notice of the dispute, as required under 15 U.S.C. § 1681s-2(b).  The Court agrees.

The purpose of the FCRA is to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit" and other information "in a manner which is fair and equitable to the consumer."  15 U.S.C. § 1681(b). Prompted by congressional concern over abuses in the credit reporting industry, the FCRA safeguards the "confidentiality, accuracy, relevancy and proper utilization" of consumer credit information.  *See id.*

The FCRA imposes responsibilities on three types of entities: (1) users of consumer reports, (2) consumer reporting agencies, and (3) furnishers of information. *See Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 11 (D. Mass. 2004). In the present case, Verizon is a "furnisher of information." Its responsibilities in connection with providing information to consumer reporting agencies is therefore governed by 15 U.S.C. § 1681s-2. *See id.* Section 1681s-2 imposes two duties upon such furnishers of information: "the duty to provide accurate information [§ 1681s-2(a)] and the duty to undertake an investigation upon receipt of notice of dispute from a consumer reporting agency [§ 1681s-2(b)]." *Id.* (quotation and internal citation omitted).

Pursuant to §§ 1681s-2(c) and (d), the enforcement of violations of § 2(a) (the duty to provide accurate information) is limited exclusively to certain state and federal officials. *Id.* "Consequently, courts have consistently held that there is no private action for violations of § 1681s-2(a)." *Id.*; *see also Aklagi v. NationsCredit Fin. Servs. Corp.*, 196 F. Supp. 2d 1186, 1192 (D. Kan. 2002). By contrast, courts have held that such a private action does exist for violations of § 1681s-2(b) (the duty to undertake an investigation). *See, e.g., Gibbs*, 336 F. Supp. 2d at 11; *Gordon v. Greenpoint Credit*, 266 F. Supp. 2d 1007, 1010 (S.D. Iowa 2003), and cases cited.

However, because § 2(b) concerns the duty of a furnisher of information to act in response to a notice of a dispute from a credit reporting agency, "courts have 'uniformly' concluded that § 2(b) 'provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed.'" *Gibbs*, 336 F. Supp. 2d at 11-12 (quoting *Aklagi*, 196 F. Supp. 2d at 1193).

Here, Verizon contends that the FCRA claim should be dismissed because the amended complaint does not allege that any consumer reporting agency ever contacted it regarding the

8

dispute. Plaintiff apparently agrees, and consents to a dismissal of the claim. Accordingly, to the extent Count 3 of the amended complaint asserts a claim under the FCRA, it will be dismissed.

### C. State Law Claims

In addition to the FCRA claim, the amended complaint raises four claims under state law theories. Specifically, the amended complaint alleges claims for (1) what appears to be negligence; (2) breach of contract; (3) violation of the Massachusetts Credit Reporting Act; and (4) violation of Mass. Gen. Laws ch. 93A. Defendant contends that all of the state law claims are preempted by the FCRA's general preemption provision, 15 U.S.C. § 1681t(b), and should be dismissed.

Before considering whether plaintiff's state law claims are preempted, the Court must first address a possible conflict between § 1681t(b) and another potentially relevant provision, § 1681h(e).

#### 1. Preemption

Verizon contends that plaintiff's state law claims are preempted by § 1681t(b) of the FCRA. That statute provides, in relevant part, that

> [n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies [with certain exceptions, discussed below].

15 U.S.C. § 1681t(b)(1)(F). "This section has been called 'the absolute immunity provision' which, if applicable, bars any state law claim based on conduct which is governed by § 1681s-2." *Gibbs*, 336 F. Supp. 2d at 13 (citing *Aklagi*, 196 F. Supp. 2d at 1194).[2]

---

[2] Plaintiff disputes that § 1681t(b) preempts *all* state law claims relating to the subject matter of § 1681s-2, contending that there is no indication that "Congress intended federal law to occupy a field exclusively." *See*

9

Section 1681t(b), however, is the only starting point. Section 1681h(e) provides, with exceptions not relevant here, that

> no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

"This provision, by prohibiting certain state-law claims, impliedly allows others." *Islam v. Option One Mortgage Co.*, 432 F. Supp. 2d 181, 190 (D. Mass. 2006). There is therefore a potential conflict between § 1681h(e) and § 1681t(b), which purports to preempt *all* state law claims related to the reporting of consumer credit information.

The two provisions are enigmatic at best, and a variety of conflicting approaches have emerged as courts have attempted to reconcile them.[3] The Court, however, agrees with Judge Young of this district that reconciliation is not necessary, at least in the present case. *Islam*, 432

---

*Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). As grounds for this contention, plaintiff relies on 15 U.S.C. § 1681t(a), which states:

> *[e]xcept as provided in subsections (b) and (c) of this section*, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers . . . except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

(emphasis added). Leet contends that "the language of the statute does not provide for federal exclusivity," but rather that the FCRA preempts only inconsistent state laws. However, plaintiff's reading ignores the first line of the provision, which indicates that § 1681t(b) is an exception to the limitation that the FCRA preempts only inconsistent state laws. Section 1681t(b)(1)(F) provides, by its express terms, that with regard to the subject matter regulated by § 1681s-2, "[n]o requirement or prohibition may be imposed under the laws of any State."

[3] No circuit has yet provided guidance on the issue. For a summary of the various approaches to analyzing the two FCRA preemption provisions adopted by the district courts, *see Islam*, 432 F. Supp. 2d at 190-93.

F. Supp. 2d at 193.

> As Judge Young noted in *Islam*:
>
> [d]espite the contrary assumption in most of the cited cases, Section 1681h(e) and 1681t(b) usually are not in conflict. . . . [as] Section 1681h(e) is not a preemption provision at all. Rather, Section 1681h(e) is a *quid pro quo* grant of protection for statutorily required disclosures. Section 1681h(e) suggests not that Congress has limited actions brought in all areas regulated by the FCRA but that defendants will have qualified immunity from actions based on information disclosed pursuant to certain provisions [Sections 1681g, 1681h, and 1681m] of the FCRA.

432 F. Supp. 2d at 193 (quotation and internal citations omitted). In other words, § 1681h(e) is not even implicated "unless the cause of action is based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report." *Islam*, 432 F. Supp. 2d 193-94 (internal quotation marks omitted); 15 U.S.C. § 1681h(e). Thus, to determine whether § 1681h(e) is implicated in the present case, it is necessary to first consider the content of §§ 1681g, 1681h, and 1681m:

> Sections 1681g and 1681h deal with disclosure of information by credit reporting agencies. Section 1681m and the remaining portion of the quoted language [of § 1681h(e)] deal with disclosure of information by users of information who then take adverse action against consumers based on that information.

*Islam*, 432 F. Supp. 2d at 194.

Based on that analysis, the Court concludes that § 1681h(e) is not implicated here. As noted above, Verizon is a "furnisher of information," not a consumer reporting agency, and §§ 1681g and 1681h therefore do not apply. Nor is § 1681m or the remaining language of § 1681h(e) implicated, as Verizon has not been sued in its capacity as a user of information and because the amended complaint does not allege that Verizon took any adverse action against Leet

11

based on information in his credit report. Thus, despite the numerous district court decisions that have treated §§ 1681t(b) and 1681h(e) as conflicting provisions, the Court finds no such conflict here. In short, § 1681h(e) simply has no effect in this case, and only § 1681t(b) applies. *See Islam*, 432 F. Supp. 2d at 194.

The Court will now consider whether § 1681t(b) preempts plaintiff's state law claims.

### 2. **Count 1—Negligence**

It is not clear from the amended complaint what type of claim plaintiff is attempting to assert in Count 1. The complaint itself states that plaintiff is seeking damages on the ground that "[d]efendant wrongfully damaged plaintiff's credit in February of 2002" and for defendant's "continued refusal to rectify the credit report up until September, 2003." (Am. Compl. ¶¶ 55, 58). In its motion to dismiss, defendant characterizes Count 1 as a negligence claim. Plaintiff provides little guidance in this regard, as he does not address Count 1 in his opposition.

However, the Court need not resolve the issue. Whether Count 1 asserts a claim for negligence or is based on some other state law theory, it is clear that Count 1, in its entirety, relates to the subject matter of § 1681s-2. As such, it appears to fall squarely within the plain language of § 1681t(b)(1)(F) and is therefore preempted. 15 U.S.C. § 1681t(b)(1)(F). *See also Islam*, 432 F. Supp. 2d at 194 (holding that negligence claim was preempted by the FCRA to the extent it relied on defendant's alleged negligence in reporting information to credit agencies). Accordingly, Count 1 of the amended complaint will be dismissed.

### 3. **Count 2—Breach of Contract**

In Count 2, plaintiff asserts a claim for breach of contract. To recover for breach of contract under Massachusetts law, plaintiff must demonstrate (1) that the parties reached a valid

and binding agreement; (2) that defendant breached the terms of that agreement; and (3) that plaintiff suffered damages as a result of the breach. *See Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1122 (1st Cir. 1995). Plaintiff alleges that in September 2003 he entered into an agreement with Verizon—which was confirmed in writing—that he "would pay $300 in exchange for defendant considering any debt paid in full, but more importantly, to do what is necessary with the credit bureaus to erase any trace of the credit problem." (Am. Compl. ¶ 38). He further alleges that defendant breached this agreement when it failed to remove the derogatory item from his credit report, despite his $300 payment. Finally, he alleges that he suffered damages from this alleged breach, when he was unable to secure financing for a planned real estate investment deal.

Verizon contends that the preemption provision contained in § 1681t(b)(1)(F) encompasses claims for breach of contract. Plaintiff responds that the FCRA does not preempt a breach of contract claim, as such a claim is not a "requirement or prohibition . . . imposed under the laws of any State," but rather is an obligation imposed by the contracting party upon himself. Based on analogous reasoning by the United States Supreme Court in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992), the Court concludes that the breach of contract claim is not preempted and therefore survives.

In *Cipollone*, the Supreme Court stated that

> [w]hen Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation.

505 U.S. at 517 (quotation and internal citations omitted). "The *Cipollone* Court held that the enactment by Congress of such a provision addressing the pre-emptive scope of the statute in

13

which it is contained, indicates an intent that all matters beyond the reach of the provision are not pre-empted." *Myrick v. Freuhauf Corp.*, 13 F.3d 1516, 1521 (11th Cir. 1994). "Therefore, where there is an express pre-emption provision a court 'need only identify the domain expressly pre-empted' by the statutory provisions." *Id.* (quoting *Cipollone*, 505 U.S. at 517).

*Cipollone* involved a preemption provision nearly identical to the one at issue here. The statute states as follows:

> [n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

*Cipollone*, 505 U.S. at 515 (quoting 15 U.S.C. § 1334(b)).

The Court concluded that § 1334(b) did not preempt a claim for breach of an express warranty as such a claim is "'not imposed under State law,' but rather imposed *by the warrantor*." *Cipollone*, 505 U.S. at 525 (emphasis in original). According to the Court, "a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement . . . *imposed under State law*.'" *Id.* at 526 (emphasis in original). The Court further noted in a footnote that the claim might have been preempted "if the Act pre-empted '*liability*' imposed under state law . . . but instead the Act expressly pre-empts only a '*requirement or prohibition*' imposed under state law." *Id.* at 526 n.24 (emphasis in original). As the Court explained, "common understanding dictates that a contractual requirement, although only enforceable under state law, is not 'imposed' by the State, but rather is 'imposed' by the contracting party upon itself." *Id.*

Like the provision in *Cipollone*, § 1681t(b)(1)(F) is an express preemption provision that, by its own terms, only preempts "requirement[s] or prohibition[s]" that are "imposed under the

14

laws of any State." Plaintiff's breach of contract claim is not preempted, as Verizon's alleged contractual obligation to remove the negative information from plaintiff's credit report was not imposed by state law, but rather was imposed by Verizon itself when it entered into the September 2003 agreement.

Accordingly, the breach of contract claim is not preempted by the FCRA and defendant's motion to dismiss will therefore be denied as to Count 2.[4]

### 4. Count 3—Massachusetts Credit Reporting Act

In his opposition, plaintiff seeks leave to amend the complaint further in order to add a claim under Mass. Gen. Laws ch. 93, § 54A. The point of the request is somewhat unclear, as Count 3 already asserts a claim under the Massachusetts Credit Reporting Act, Mass. Gen. Laws ch. 93, §§ 50-67, which would appear to encompass a claim under § 54A.[5] In the interest of efficiency, the Court will simply deem Count 3 to have asserted a claim pursuant to § 54A and will consider whether such a claim is preempted by the FCRA.

Chapter 93, § 54A(a) provides that

> [e]very person who furnishes information to a consumer reporting agency shall follow reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete. No person may provide information to a consumer reporting agency if such person knows or has reasonable cause to believe such information is not accurate or complete.

---

[4] Plaintiff further contends that a claim for negligent performance of a contract is not preempted by the FCRA. Under Massachusetts law, it appears that such a cause of action may exist. *See Abrams v. Factory Mut. Liab. Ins. Co.*, 298 Mass. 141, 143 (1937) ("The plaintiff could maintain an action of contract against the defendant if, without excuse, the defendant wholly refused to defend. He can likewise maintain an action of contract if the defendant defended negligently."). However, no such action has been asserted in the amended complaint. Accordingly, the issue of whether the FCRA preempts a negligent performance of contract claim is not presently before the Court.

[5] The Court notes, however, that Count 3 of the amended complaint merely alleges that defendant violated the "Massachusetts Fair Credit Reporting Act" and does not cite to any specific statutory provision.

According to plaintiff, Verizon violated this statute when it failed to erase the negative item from his credit report, despite its knowledge that he had made the agreed-upon payment of $300.

At first glance, Mass. Gen. Laws ch. 93, § 54A would appear to fall directly within the FCRA's preemptive language: it is a requirement imposed by state law that clearly relates to the responsibilities of a furnisher of information. 15 U.S.C. § 1681t(b)(1)(F). However, the FCRA also provides that

> this paragraph [§ 1681t(b)(1)(F)] shall not apply— (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws . . .

15 U.S.C. § 1681t(b)(1)(F). This language suggests that plaintiff's § 54A claim is *not* preempted.

There is, however, another wrinkle in this analysis. While the FCRA expressly exempts § 54A(a) from its preemptive reach, it includes no such exemption for § 54A(g)—the provision that creates a private cause of action for violations of § 54A(a).[6] In the Court's view, the absence of express language exempting § 54A(g) from the FCRA's preemption provision is fatal. As Judge Saris has noted,

> [t]he FCRA . . . did not exempt from its provisions Mass. Gen. Laws ch. 93, § 54A(g), which creates a cause of action for providing false information . . . . Where, as here, the FCRA does not exempt the state law provision expressly authorizing a private cause of action, such private causes of action remain preempted.

*Gibbs*, 336 F. Supp. 2d at 13; *see also Islam*, 432 F. Supp. 2d at 186-89.[7] Accordingly, plaintiff's

---

[6] Mass. Gen. Laws ch. 93, § 54A(g) states that

[a] person who furnishes information to a consumer reporting agency shall be liable for failure to comply with the provisions of this section, unless the person so furnishing the information establishes by a preponderance of the evidence that, at the time of the failure to comply with this section, such person maintained reasonable procedures to comply with such provisions.

[7] The Court notes that this result presents a potential anomaly. As Judge Young noted in *Islam*, there does not appear to be statutory "authorization for the Massachusetts Attorney General or other state official to

16

claim under Mass. Gen. Laws ch. 93, § 54A is preempted. Count 3 of the amended complaint will be dismissed.[8]

### 5. Count 4—Unfair and Deceptive Practices

Finally, Count 4 of the amended complaint seeks damages on the grounds that Verizon engaged in unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A. "The purpose of G.L. c. 93A is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace." *Poznik v. Massachusetts Med. Prof'l Ins. Ass'n*, 417 Mass. 48, 53 (1994). A practice or act is unfair under Chapter 93A "if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people." *Morrison v. Toys "R" Us, Inc.*, 441 Mass. 451, 457 (2004).

Verizon contends that the claim is preempted by the FCRA to the extent plaintiff premises it on (1) the reporting of inaccurate information to credit reporting agencies or (2) the failure to remove such information from his credit report. The Court agrees. Chapter 93A qualifies as a requirement imposed by state law, and to the extent the claim is based on Verizon's reporting of plaintiff's consumer credit information, it directly relates to the subject matter of § 1681s-2.

Plaintiff responds that the Chapter 93A claim survives preemption because it alleges the

---

enforce Section 54A(a), and there appears to be no reported cases involving official enforcement of Section 54A." 432 F. Supp. 2d at 189. It is therefore possible that Congress has excepted § 54A(a) from preemption without providing for a mechanism by which it can be enforced.

[8] To the extent Count 3 asserts a claim under the Massachusetts Credit Reporting Act other than pursuant to § 54A, such claim is preempted and will be dismissed as a requirement imposed by state law, relating to the subject matter regulated by § 1681s-2.

existence of unfair practices independent from the subject matter of § 1681s-2. Specifically, plaintiff alleges (1) that Verizon charged him for services without providing him with a price plan; (2) that Verizon representatives made false assurances to the effect that he could not be held responsible for service charges incurred prior to his receipt of the price plan; and (3) that Verizon allegedly forged his signature on the service agreement.

The Court, however, need not reach that issue. All of the alleged unfair acts took place by October 1998, and plaintiff did not file the present suit until September 2005. Thus, to the extent he relies on these acts to assert a claim under Chapter 93A, the claim is barred by the four-year statute of limitations. *See* Mass. Gen. Laws ch. 260, § 5A. Count 4 of the amended complaint will therefore be dismissed.

### IV.    Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED in part and DENIED in part. Counts 1, 3, and 4 of plaintiff's amended complaint are dismissed for failure to state a claim upon which relief can be granted.

**So Ordered.**

/s/ F. Dennis Saylor  
F. Dennis Saylor IV  
United States District Judge

Dated: March 27, 2007